UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT WALKER,

                        Plaintiff,

      v.

MICHAEL McGINNIS, Supt. Southport Corr.
 Facility,
NURSE WEAVER, Southport Corr. Facility,
NURSE DOHL, Southport Corr. Facility,
PAUSCHE, C.O.,
DR. SILVERBERG, Great Meadow Correctional
 Faciliy,
SGT. BROWN, Great Meadow Correctional
 Facility,
P.A. NURSE "TED," Great Meadow Corr.,

                        Defendants.

**DECISION
and
ORDER**

05-CV-0418F
(consent)

---

APPEARANCES:        ROBERT WALKER, *Pro Se*
                               81-A-5460
                               Elmira Correctional Facility
                               PO Box 500
                               Elmira, New York 14902

                               ANDREW M. CUOMO
                               Attorney General, State of New York
                               Attorney for Defendants
                               DELIA DIANNA CADLE
                               Assistant Attorney General, of Counsel
                               107 Delaware Avenue
                               Fourth Floor
                               Buffalo, New York 14202

## **JURISDICTION**

The parties to this action consented to proceed before the undersigned on May 8, 2006. The matter is presently before the court on motions for summary judgment filed by Plaintiff on February 20, 2007 (Doc. No. 44), and by Defendants on March 13,

2007 (Doc. No. 47).

## BACKGROUND

Plaintiff Robert Walker ("Plaintiff"), commenced this civil rights action *pro se*, on June 10, 2005, claiming Defendants, employees of Southport Correctional Facility ("Southport") and Great Meadow Correctional Facility ("Great Meadow"), violated his civil rights pursuant to 42 U.S.C. § 1983, by denying Plaintiff necessary medical care for Hepatitis B, Hepatitis C and an enlarged prostate, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  The Complaint named as Defendants Southport Superintendent Defendants Michael McGinnis ("McGinnis"), Southport nurses Weaver ("Weaver") and Dohl ("Dohl"), Great Meadow physician Dr. Silverberg ("Dr. Silverberg"), Corrections Officer ("C.O.") Pausche ("Pausche"), and Great Meadow Sergeant Brown ("Sgt. Brouwn").  On August 9, 2005, Plaintiff filed an amended complaint (Doc. No. 7) ("Amended Complaint"), adding as a Defendant Great Meadow P.A. Nurse "Ted" ("Nesmith").[1]  A Second Amended Complaint (Doc. No. 11) ("Second Amended Complaint") was filed on October 7, 2005.  By Order filed November 29, 2005 (Doc. No. 12), all claims were dismissed as against Defendants Pausche and Sgt. Brown, who were terminated as Defendants to this action.  Answers to the Second Amended Complaint were filed on January 18, 2006, by McGinnis (Doc. No. 13), on February 8, 2006, by Dr. Silverberg (Doc. No. 20), and Nesmith (Doc. No. 21), and on

---

[1] In his answer, Defendant P.A. Nurse "Ted" clarifies that he is Ted Nesmith, a Physician Assistant at Great Meadow.  Doc. No. 21.

March 1, 2006 by Weaver (Doc. No. 23).[2]

On February 20, 2007, Plaintiff filed a motion for summary judgment (Doc. No. 44) ("Plaintiff's motion"), supported by the attached Affidavit in Support of Motion for Summary Judgment ("Plaintiff's Affidavit").  On March 13, 2007, Defendants filed a motion for summary judgment (Doc. No. 47) ("Defendants' Motion"), along with the Declaration of Dr. Silverberg (Doc. No. 48) ("Dr. Silverberg Declaration") with attached exhibits ("Defendants' Exh(s). __"), a Statement of Undisputed Facts (Doc. No. 49) ("Defendants' Statement of Facts"),[3] and a Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. No. 50) ("Defendants' Memorandum").

On March 30, 2007, Defendants filed the Declaration of Assistant New York Attorney General Ann C. Williams ("Williams") in Opposition to Plaintiff's Summary Judgment Motion and in Further Support of Defendants' Motion for Summary Judgment (Doc. No. 55) ("First Williams Declaration").  On April 20, 2007, Plaintiff filed a Declaration in Opposition to Counsel's Summary Judgment Motion and in Further Support of Plaintiff's Motion for Summary Judgment (Doc. No. 56) ("First Plaintiff's Declaration").  On June 1, 2007, Defendants filed the Declaration of Assistant Attorney General Williams in Further Support of Defendants' Motion for Summary Judgment (Doc. No. 57) ("Second Williams Declaration").  On June 18, 2007, Plaintiff filed a

---

[2] Defendant Dohl has yet to be served (see Doc. No. 18 - Summons returned unexecuted by Robert Walker as to Nurse Dohl), and no answer has been filed on her behalf.  As such, Dohl is not a party to this action.

[3] An electronic filing error required Defendants' Statement of Facts to be refiled on March 14, 2007 (Doc. No. 51).

Declaration in Further Support / Cross-Motion of Plaintiff's Motion for Summary Judgment (Doc. No. 58) ("Second Plaintiff's Declaration").  On November 15, 2007, Defendants filed the Declaration of Assistant Attorney General Ann C. Williams to Submit Additional Documents Referenced in the Declaration of Howard E. Silverberg, M.D., Dated March 9, 2007 (Doc. No. 59) ("Third Williams Declaration").  On February 28, 2008, Defendants filed the Declaration of Assistant Attorney General Delia D. Cadle (Doc. No. 63) ("Cadle Declaration"), attached to which is a Supplement to Defendants' Exh. A, consisting of additional medical records of Plaintiff.  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion is DENIED; Defendants' motion is GRANTED.

## **FACTS**[4]

Plaintiff Robert Walker ("Plaintiff" or "Walker"), an inmate incarcerated with the New York State Department of Correctional Services ("DOCS"), was diagnosed in February 2003 with past exposure to and recovery of Hepatitis B and ongoing Hepatitis C[5] while housed at Sing Sing Correctional Facility ("Sing Sing").  In support of Defendants' motion for summary judgment, Defendants submitted as Defendants' Exh.

---

[4] Taken from the pleadings and motion papers filed in this action.

[5] "Hepatitis" refers to inflammation of the liver, most commonly caused by viral infections, although bacterial and fungal infections, as well as alcohol and substance abuse and medications are other causes. Although Hepatitis B is curable, it can lead to chronic liver disease.  Hepatitis C is a chronic condition for which there is no cure, but which requires monitoring of the patient's health status.  The ABC's of Hepatitis, Hepatitis Foundation International, *available at* http://www.hepfi.org/living/liv_abc.html.

A, a copy of Plaintiff's Ambulatory Health Record ("AHR"), the page numbers of which are numerically Bates stamped.[6] According to the Ambulatory Health Record, upon transferring to Southport Correctional Facility ("Southport") on December 31, 2004, Plaintiff's chronic medical problems included Hepatitis B and C, hypertension, and benign prostatic hyperplasia ("BPH"),[7] and Plaintiff's medications included Adalat for hypertension and Proscar and Flomax for BPH.  AHR 000038-000039.  Between February 1 and 5, 2005, Plaintiff underwent a series of routine laboratory tests to monitor his Hepatitis and BPH conditions.  AHR 000054, 000055, and 000057  Additional routine laboratory tests to monitor Plaintiff's Hepatitis and BPH conditions were done on March 8, 2005, with the results of such tests reviewed by Nurse Northrup, who is not a party to this action.  AHR 000032.  Plaintiff was also examined by a medical doctor on March 11, 2005.  AHR 000032.  Plaintiff's prescription medications were continued throughout his incarceration at Southport.  AHR 000031-000039.

Upon being transferred on April 8, 2005, to Great Meadow Correctional Facility ("Great Meadow"), Plaintiff's Ambulatory Health Record indicated that Plaintiff had Hepatitis, hypertension, and BPH with acute urinary retention.  AHR 000031.  Plaintiff's medications, including Adalat, Proscar and Flomax were ordered, and Plaintiff was to be scheduled for a follow-up examination by a physician and additional laboratory work.  *Id*.  Throughout his incarceration at Great Meadow, Plaintiff's medications continued to be

---

[6] References to "AHR __" are to the Bates number of the relevant page of Plaintiff's Ambulatory Health Record.

[7] "Benign prostatic hyperplasia a nonmalignant (noncancerous) enlargement of the prostate gland, a common occurrence in older men," and can impede the flow of urine.  Benign Prostatic Hyperplasia, *available at* http://www.medicinenet.com/benign_prostatic_hyperplasia/article.htm.

prescribed, and Plaintiff underwent routine laboratory testing on June 13, 2005, AHR 000025 and 000052-000053, July 11, 2005, AHR 000024 and 000051, January 5, 2006, AHR 000020 and 000050, February 7, 2006, AHR 000018 and 000047-000049, and March 15, 2006, AHR 000017 and 000045-000046, to monitor Plaintiff's Hepatitis and BPH conditions.  The laboratory reports issued in connection with the laboratory tests in 2006 indicate that Plaintiff's Hepatitis C condition was both "chronic and stable."  AHR 000050 (January 5, 2006); AHR 0900049 (February 7, 2006); AHR 000046 (March 15, 2006).

On April 20, 2005, Plaintiff's medical record was reviewed by John Koella, M.D. ("Dr. Koella"), who renewed Plaintiff's Adalat and scheduled Plaintiff for further examination on May 4, 2005.  AHR 000029.  When Plaintiff did not keep his May 4, 2005 appointment, he was issued a pass to go to the facility's medical clinic on May 5, 2005, but also failed to keep that appointment.  AHR 000028-000029.

On May 12, 2005, Plaintiff was admitted to Great Meadow's infirmary in connection with an inability to urinate.  AHR 000028, and 000115-000116.  Dr. Silverberg explains, and Plaintiff does not dispute, that Plaintiff's inability to urinate, as well as other urination problems Plaintiff experienced, were related to his BPH condition, but is unrelated to his Hepatitis condition.  Silverberg Declaration ¶ 25.

Plaintiff was examined by with regard to his Hepatitis and BPH conditions, by Dr. Silverberg on May 15 and July 22, 2005.  AHR 000024 and 000028.  During the July 12, 2005 examination, Dr. Silverberg reviewed Plainitff's laboratory work of July 11, 2005.  AHR 000024.  Upon examining Plaintiff on July 22, 2005, Plaintiff expressed concern about recently losing 20 pounds for which he requested Ensure as a dietary

supplement, as well as his hypertension and BPH.  *Id*.  Dr. Silverberg noted that Plaintiff looked well, his blood pressure was normal, and Plaintiff had gained two pounds since May 2005.  *Id*.  Dr. Silverberg explained to Plaintiff that his Hepatitis condition was stable and that Plaintiff would be followed every four to six months with additional laboratory testing and physical examinations.  *Id*.  Because Plaintiff's medical records did not show any weight loss, Ensure was not prescribed at that time.  *Id*.  Throughout Plaintiff's incarceration at Great Meadow, Plaintiff continued to receive a multivitamin, and prescription medications for his BPH and hypertension.  Silverberg Declaration ¶ 22;  AHR 000134-000136.

## DISCUSSION

**1.    Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra*, 477 U.S. at 255); *Rattner, supra*.  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary

judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 323-24 (1986) (quoting Fed. R. Civ. P. 56).  Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case."  *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).  Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in

> this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. 42 U.S.C. § 1983. Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140).

Here, Plaintiff alleges Defendants violated his right to be free from cruel and unusual punishment by failing to treat and improperly treating his medical conditions of Hepatitis B and C and BPH condition in violation of the Fourteenth Amendment's Due Process Clause.[8] Second Amended Complaint ¶ 5(A). The Fourteenth Amendment Due Process Clause, however, only applies to claims of inadequate medical care

---

[8] Although Plaintiff actually claims only that Defendants failed to treat his Hepatitis B, the record establishes that Plaintiff has recovered from Hepatitis B, but continues to suffer from Hepatitis C which is a chronic and more serious illness. Given Plaintiff's *pro se* status, the court, in accordance with the Supreme Court's instruction, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of complaint drafted by pro se plaintiff held to less stringent standards than formal pleadings drafted by attorneys), liberally construes Plaintiff's papers as alleging deliberately indifference with regard to both Hepatitis B and C. Similarly, Plaintiff's allegation that Defendants failed to properly treat a urinary condition is construed as alleging a failure to treat Plaintiff's BPH.

alleged by pretrial detainees who have yet to be convicted.  *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  Because allegations of denial of medical care for prison inmates are analyzed under the Eighth Amendment, *id*., the court construes the claim as having been asserted under the Eighth Amendment.  *Haines*, 404 U.S. at 520.

**2.     Deliberate Indifference to Medical Needs**

Inadequate medical care violates the Eighth Amendment's proscription against cruel and unusual punishment when a defendant acts with "deliberate indifference to [a] prisoner's] serious medical needs."  *Harrison v. Barkley*, 219 F.32d 132, 136 (2d Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The "deliberate indifference" inquiry has both an objective and a subjective component.  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Objectively, Plaintiff must demonstrate "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).  Among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects and individual's daily activities; or the existence of chronic and substantial pain."  *Chance* 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  Nevertheless, "[a]n assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment."  *Livingston v. Goord*, 225 F.Supp.2d 321, 329 (W.D.N.Y. 2002) (quoting *Inciarte v. Spears*, 1998 WL 190279, * 3

(S.D.N.Y. April 20, 1998)).  Further, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."  *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702-03).

As for the subjective component, the court must consider whether the deprivation of medical care was brought about by defendants in wanton disregard, or deliberate indifference, of the inmate's constitutional rights.  *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).  To establish such deliberate indifference, therefore, a plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain on the plaintiff.  *Wilson*, 501 U.S. at 299, *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992).  In other words, the plaintiff must demonstrate that defendants were (1) aware of facts from which the inference could have been drawn that a substantial risk of serious harm existed, and (2) that defendants in fact drew such an inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Morales*, 278 F.3d at 132.

Denying or delaying access to medical care or intentionally interfering with prescribed treatment may constitute deliberate indifference.  *Estelle, supra*, at 104; *see Harrison*, 219 F.3d at 138 (holding dentist's outright refusal for one year to treat a cavity, a degenerative condition that tends to cause acute infection and pain if left untreated, combined with imposition of an unreasonable condition on such treatment, could constitute deliberate indifference on the part of prison dentist, precluding summary judgment in defendant's favor).  Such delay in treatment violates the Eighth Amendment

"whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle, supra*, at 104-105. Further, culpable intent requires the inmate to establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer, supra*, at 834-35).

"Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). Neither "inadvertent failures to provide adequate medical care" nor "negligence in diagnosing or treating a medical condition" comprise Eighth Amendment violations. *Estelle, supra*, at 105-06 (holding medical malpractice does not become a constitutional violation merely because the victim is a prisoner); *Harrison, supra*, at 139 ('We agree that the mere malpractice of medicine does not amount to an Eighth Amendment violation."). Nor does a "mere disagreement" with a physician over the appropriate course of treatment arise to a constitutional violation, although in certain instances a physician may evince deliberate indifference by consciously choosing "an easier and less efficacious" treatment plan. *Chance*, 143 F.3d at 703. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *Estelle*, 429 U.S. at 102, or "incompatible with the evolving standards of decency that mark the progress of

a maturing society," *id.* at 105-06.  Likewise, a disagreement as to the appropriate course of treatment is not a sufficient basis for a deliberate indifference claim.  *Chance*, 143 F.3d at 703.  Although a prisoner has a right to medical care, "there is no right to the medical treatment of one's choice."  *McCloud v. Delaney*, 677 F.Supp. 230, 232 (S.D.N.Y. 1988).  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Chance*, 143 F.3d at 703.  Here, viewing the record in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, the record establishes that this case presents nothing more than a disagreement between Plaintiff and Defendants as to the specific course of Plaintiff's medical treatment for his Hepatitis B and C and BPH.

With regard to the objective component, the record establishes that Plaintiff is recovering from Hepatitis B and is suffering from Hepatitis C, a chronic condition for which there is no cure.  Defendants concede that Hepatitis C "could be categorized as a serious medical condition," yet maintain that Plaintiff's allegations fail to satisfy the objective component of his deliberate indifference claim.  Defendants' Memorandum at 12.  There is, however, at least a genuine issue of fact as to whether Plaintiff's Hepatitis C, a disease for which there is no sure and which can lead to degeneration of the liver and, eventually, death, can be considered a "condition of urgency."  *Morales*, 278 F.3d at 132.  Significantly, given that Plaintiff's Hepatitis C requires regular monitoring, the disease could very well be considered an illness that a reasonable doctor "would find important and worthy of comment or treatment."  *Chance* 143 F.3d at 702.  A genuine issue of fact thus precludes summary judgment on the basis that Plaintiff's cannot

establish the objective component of his Eighth Amendment deliberate indifference claim. Nevertheless, the record fails to establish a triable issue of fact on the presence of the subjective component for the Eighth Amendment claim.

Specifically, despite vague assertions that Defendants continually ignored his requests to be examined by a physician or to have treatment for his Hepatitis condition, the record establishes that Plaintiff's Hepatitis C was routinely monitored through regular laboratory tests, including those conducted between February 1 and 5, 2005, AHR 000054-000055 and 000057, March 8, 2005, AHR 000032, June 13, 2005, AHR 000025 and 000052-000053, July 11, 2005, AHR 000024 and 000051, January 5, 2006, AHR 000020 and 000050, February 7, 2006, AHR 000018 and 000047-000049, and March 15, 2006, AHR 000017 and 000045-000046. This establishes that Plaintiff underwent routine laboratory testing to monitor his Hepatitis condition at least every four to six months, as recommended by Dr. Silverberg, Silverberg Declaration ¶¶ 8, 15, facts unchallenged by Plaintiff. Also, the laboratory reports issued in connection with the laboratory tests in 2006 indicate that Plaintiff's Hepatitis C condition was both "chronic and stable." AHR 000050 (January 5, 2006); AHR 0900049 (February 7, 2006); AHR 000046 (March 15, 2006).

Insofar as Plaintiff alleges that Defendants ignored his complaints of urine discoloration and spots on the back of Plaintiff's right hand, Second Amended Complaint ¶ 5A(3), even assuming, *arguendo*, such allegation is true, Plaintiff fails to explain how the failure to provide treatment for such symptoms establishes deliberate indifference to a serious medical need that could result in death, degeneration, or extreme pain. Nor does Plaintiff challenge Dr. Silverberg's assertion, Dr. Silverberg

Declaration ¶ 25, that any urination problems experienced by Plaintiff were related to his BPH, and not to his Hepatitis. The record establishes that Plaintiff was consistently prescribed Proscar and Flomax for his BPH, which was also routinely monitored through laboratory throughout Plaintiff's incarceration at Southport and Great Meadow, and nothing in the record indicates, nor does Plaintiff contend, that such treatment was ineffective.

It is significant that nowhere in Plaintiff's papers, including the pleadings and Plaintiff's papers both in support of Plaintiff's motion and in opposition to Defendants' motion does Plaintiff describe what type of treatment Defendants failed to provide for his Hepatitis B and C or BPH. Although Plaintiff does assert that Defendants have failed to ever order a liver biopsy be performed on Plaintiff, Plaintiff's Motion at 2, Plaintiff does not contend that the liver biopsy, finally performed on January 26, 2007, was a "treatment" for his Hepatitis, or that upon receiving the results of the biopsy, the treatment plan for Plaintiff's Hepatitis and BPH conditions was amended.

Plaintiff thus presents only conclusory assertions regarding the alleged inadequacy of the treatment received for his Hepatitis B and C and BPH conditions, has failed to explain why the medical treatment received was insufficient, and thus has failed to present any admissible evidence creating a genuine issue of fact concerning the subjective component of the Eighth Amendment deliberate indifference standard. Summary judgment is thus GRANTED in favor of Defendants and DENIED as to Plaintiff.

Because Plaintiff is unable to avoid summary judgment on his conclusory assertion that summary judgment is GRANTED in favor of Defendants and DENIED as

to Plaintiff as to all remaining claims.  Accordingly, the court need not address Defendants' alternative arguments in support of summary judgment, including that Defendant McGinnis was not personally involved in Plaintiff's medical care or the alleged denial of adequate medical care, Defendants' Memorandum at 3-6, and that Defendants are qualifiedly immune from liability on Plaintiff's claims, Defendants' Memorandum at 16-19.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 44) is DENIED; Defendants' motion (Doc. No. 47) is GRANTED.  The Clerk of the Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	March 5, 2008
	Buffalo, New York

**Any appeal of this Decision and Order must be taken to by filing a notice of appeal within 30 days of the filing of this Decision and Order pursuant to Fed. R. App. P. 4(a)(1) & (c).**